**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Martin BARAJAS–CHAVEZ,
Defendant–Appellee.**

No. 97–2033.

United States Court of Appeals,
Tenth Circuit.

Jan. 7, 1999.

John J. Kelly, United States Attorney (Fred J. Federici and Jason Bowles, Assistant United States Attorneys, with him on the brief), Las Cruces, New Mexico, for the appellant.

Floyd W. Lopez, Albuquerque, New Mexico, for the appellee.

Before SEYMOUR, Chief Judge, PORFILIO, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL, KELLY, HENRY, BRISCOE, LUCERO, and MURPHY, Circuit Judges.

BRISCOE, Circuit Judge.

Defendant Martin Barajas–Chavez was convicted by a jury of transporting two illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). On defendant's motion at the conclusion of the case, the district court set aside the jury's verdict and entered a judgment of acquittal on the ground that the evidence was insufficient to demonstrate defendant acted knowingly "in furtherance of" the aliens' illegal presence in the United States. After rehearing the case en banc, we reverse and remand with directions to the district court to reinstate the jury's verdict.

## I.

On March 10, 1996, New Mexico state police established a roadblock on Interstate 40 in Gallup, New Mexico, to check for drunk drivers. Agents from Immigration and Naturalization Service were on hand in case the police discovered illegal aliens. At approximately 2:30 a.m., the police stopped a pickup truck driven by defendant. After checking defendant's license and registration, the police requested assistance from INS Agent Joseph Garcia. Upon questioning by Garcia, defendant admitted he was an illegal alien. In addition to defendant, there were ten passengers in the pickup, all of whom were determined to be illegal aliens.

Defendant was indicted on two counts of transporting illegal aliens, in violation of 8

U.S.C. § 1324(a)(1)(A)(ii). More specifically, he was charged with transporting two of the ten illegal aliens found in the pickup, Arturo Lopez–Arellano and Jesus Macias–Lopez. A jury convicted defendant on both counts. The district court initially denied defendant's motion for judgment of acquittal at the conclusion of the evidence at trial, but defendant renewed his motion following the verdict and the court granted the motion. *United States v. Barajas–Chavez,* 991 F.Supp. 1289 (D.N.M.1996).

In granting the motion for judgment of acquittal, the district court focused on the "in furtherance of" element of § 1324(a)(1)(A)(ii), and concluded it recognized a distinction between "those who support the presence of illegal aliens in this country through a smuggling operation or some other form of illicit transportation," and those " 'who come into daily contact with undocumented aliens and who, with no evil or criminal intent, intermingle with them socially or otherwise.' " *Id.* at 1292 (quoting *United States v. Moreno,* 561 F.2d 1321, 1323 (9th Cir.1977)). Based upon this perceived distinction, the court proceeded to review the evidence for the presence or absence of three factors: whether defendant received compensation for transportation, whether defendant took precautionary efforts to conceal the illegal aliens, and whether the illegal aliens were defendant's friends or co-workers or were merely human cargo. Although the court acknowledged defendant and his passengers were traveling "to Denver in search of employment," *id.* at 1294, it found defendant (1) did not profit from his transportation of Lopez–Arellano and Macias–Lopez, (2) did not attempt to conceal any of the illegal aliens, and (3) was a relative of Lopez–Arellano and an acquaintance of Macias–Lopez. The court concluded defendant's transportation of the two illegal aliens "was an act merely incidental to the aliens' presence [in this country] and [wa]s too attenuated to constitute a furtherance of their illegal presence." *Id.*

The district court's decision was originally affirmed in *United States v. Barajas–Chavez,* 134 F.3d 1444 (10th Cir.1998).

## II.

■ Defendant was charged with and convicted of violating 8 U.S.C. § 1324(a)(1)(A)(ii), which makes it illegal for

> [a]ny person who ... knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

To establish a violation, the government must prove "(1) the transporting or moving of an alien within the United States, (2) that the alien was present in violation of law, (3) that the defendant was aware of the alien's status, and (4) that the defendant acted willfully in furtherance of the alien's violation of the law." *United States v. Diaz,* 936 F.2d 786, 788 (5th Cir.1991) (examining predecessor statute); *see United States v. Hernandez,* 913 F.2d 568, 569 (8th Cir.1990) (same); *see also United States v. Parmelee,* 42 F.3d 387, 391 (7th Cir.1994) ("a defendant's guilty knowledge that his transportation activity furthers an alien's illegal presence in the United States is an essential element of the crime"). Only the "in furtherance of" element is at issue in this appeal.

We have previously considered convictions under the identically-worded predecessor statute to § 1324(a)(1)(A)(ii). *See United States v. Chavez–Palacios,* 30 F.3d 1290 (10th Cir.1994); *United States v. Perez–Gomez,* 638 F.2d 215 (10th Cir.1981). In both cases, we briefly discussed the "in furtherance of" element. Today, we are called upon to more fully analyze the element and to determine whether evidence presented by the government in this case was sufficient to satisfy that element.

■ We begin with the language of the statute. *See Muscarello v. United States,* — U.S. ——, ——, 118 S.Ct. 1911, 1914, 141 L.Ed.2d 111 (1998). The statute makes it illegal for a person who, knowing or in reckless disregard of the fact that an individual is an illegal alien, transports or moves, or attempts to transport or move, the alien "in furtherance of" the alien's illegal entry or

continued illegal presence in the United States. Since the statute does not specifically define the term "in furtherance of," we must "construe it in accord with its ordinary or natural meaning." *Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); *see United States v. Roberts,* 88 F.3d 872, 877 (10th Cir.1996) (if Congress does not define statutory term, "its common and ordinary usage may be obtained by reference to a dictionary"); *United States v. Floyd,* 81 F.3d 1517, 1523 (10th Cir.1996) ("In interpreting Congressional intent, a reviewing court must determine whether the language used in a statute is ambiguous, or whether it has an ordinary meaning."). Webster's defines "furtherance" as "a helping forward: advancement, promotion." *Webster's Third International Dictionary* 924 (1993). Similarly, Black's defines "furtherance" as the "[a]ct of furthering, helping forward, promotion, advancement, or progress." *Black's Law Dictionary* 675 (6th ed.1990). In light of these definitions, we conclude the "in furtherance of" language is unambiguous. The statute requires that a defendant know or act in reckless disregard of the fact that an individual is an illegal alien, and that defendant's transportation or movement of the alien will help, advance, or promote the alien's illegal entry or continued illegal presence in the United States.[1]

■ Given our interpretation of the "in furtherance of" element, we reject the distinction recognized by the district court. Although we agree the element does not encompass persons " 'who come into daily contact with undocumented aliens and who, with no evil or criminal intent, intermingle with [illegal aliens] socially or otherwise,' " we do not agree that the element is limited solely to "those who support the presence of illegal aliens in this country through a smuggling operation or some other form of illicit transportation." *Barajas–Chavez,* 991 F.Supp. at 1291. Instead, we conclude the

element is sufficiently broad to encompass any person who acts, regardless of profit motive or close relationship, with knowledge or with reckless disregard of the fact that the person transported is an illegal alien and that transportation or movement of the alien will help, advance, or promote the alien's illegal entry or continued illegal presence in the United States.

Before proceeding to determine whether the evidence presented at trial was sufficient to satisfy the "in furtherance of" element, we briefly consider how other circuits have dealt with the "in furtherance of" element. The Eighth Circuit and Ninth Circuit have adopted what the Ninth Circuit refers to as the "direct or substantial relationship" test for purposes of deciding whether the "in furtherance of" element has been satisfied. *See, e.g., United States v. Velasquez–Cruz,* 929 F.2d 420 (8th Cir.1991); *Moreno,* 561 F.2d at 1323. Under this test, "there must be a direct or substantial relationship between [the defendant's] transportation [of the alien] and its furtherance of the alien's presence in the United States." *Id.* Stated in contrary terms, the "in furtherance of" element is not satisfied if a defendant's transportation of an alien is "only incidentally connected to" the alien's illegal entry or continued illegal presence. *Id.* at 1322. Although neither circuit has provided precise guidelines for determining when a "direct or substantial relationship" exists, the Ninth Circuit has suggested relevant factors include the "time, place, distance and overall impact" of the transportation. *Id.* at 1323.

The Sixth Circuit has expressly rejected the "direct or substantial relationship" approach on the grounds it "is unable to distinguish between someone who knowingly smuggles illegal aliens across the country from someone who knowingly gives an illegal alien a ride to a shelter for the homeless."

---

1. In other settings, we have construed the term "in furtherance of" in a similar, broad manner. *See, e.g., United States v. Sinclair,* 109 F.3d 1527, 1534–35 (10th Cir.1997) (concluding statements intended to promote conspiratorial objectives were made "in furtherance of" conspiracy and were thus admissible under Fed.R.Evid. 801(d)(2)(E)); *United States v. McCullah,* 76 F.3d

1087, 1102–03 (10th Cir.1996) (discussing "in furtherance of" element of 21 U.S.C. § 848), *cert. denied* —— U.S. ——, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997). Because the term is not ambiguous, "the rule of lenity—or strict construction—may not be applied." *United States v. Oxx,* 127 F.3d 1277, 1279 (10th Cir.1997).

*United States v. 1982 Ford Pick–Up*, 873 F.2d 947, 951 (6th Cir.1989). In its place, the Sixth Circuit has adopted what it describes as an "intent-based" approach, under which a factfinder is directed to consider all credible evidence concerning a defendant's intentions in transporting an illegal alien. As examples, the court has noted a factfinder may "look to see whether the defendant was compensated for the transportation," "what efforts the defendant took to conceal or harbor the illegal aliens," and "whether the illegal aliens were friends, co-workers, or companions of the defendant, or merely human cargo that was being shipped." *Id.*

The Fifth Circuit appears to have adopted a more general approach that encompasses the "direct or substantial relationship" test, but also focuses on defendant's intent in transporting the alien. *United States v. Merkt*, 764 F.2d 266, 271–72 (5th Cir.1985). With respect to the issue of intent, the court has stated a jury "should be instructed to consider all of the evidence it finds credible about [a defendant's] intentions" in moving or transporting the alien at issue. *Id.* at 272.

The Seventh Circuit has specifically refused to adopt either the "direct or substantial relationship" test or the "intent-based" approach. *Parmelee*, 42 F.3d at 391. Instead, the court has adopted a general approach that allows the government to prove the "in furtherance of" element "by reference to the facts and the circumstances surrounding [each particular] case." *Id.*

■ In light of our construction of the "in furtherance of" language, we reject the use of any particular "test" or "formula" for determining whether the "in furtherance of" requirement has been satisfied. *Cf. United States v. Reyes*, 798 F.2d 380, 384 (10th Cir.1986) ("This Circuit has no talismanic formula for ascertaining when a conspirator's statements are 'in furtherance' of the conspiracy."). Instead, we believe the proper approach is a general one, similar to those espoused by the Fifth Circuit and the Seventh Circuit. Under such an approach, a factfinder may consider any and all relevant evidence bearing on the "in furtherance of" element (time, place, distance, reason for trip, overall impact of trip, defendant's role in organizing and/or carrying out the trip).[2] Naturally, the relevant evidence will vary from case to case.

■ We now turn to the evidence in this case. Applying a de novo standard of review, we view the evidence, both direct and circumstantial, in the light most favorable to the government and, without weighing conflicting evidence or considering the credibility of witnesses, we determine whether that evidence, if believed, would establish the "in furtherance of" element. *See United States v. Evans*, 42 F.3d 586, 589 (10th Cir.1994).

■ It is uncontroverted that defendant, having lost his job in Arizona because of his status as an illegal alien, planned, organized, and attempted to carry out a trip from Prescott, Arizona, to Denver, Colorado, so that he and the two illegal aliens he was charged with transporting could look for work. Although the district court discounted this evidence, we believe it is sufficient, standing alone, to satisfy the "in furtherance of" element. In particular, we conclude defendant's transportation of the two illegal aliens would have advanced or promoted their continued illegal presence in the United States in two respects. First, the transportation would arguably have assisted the aliens in evading immigration authorities by relocating them to a city much farther from the United States–

2. We conclude the district court erred in focusing on only three factors (whether defendant received compensation for transportation, whether defendant took precautionary efforts to conceal the illegal aliens, and whether the illegal aliens were human cargo). Certainly, depending upon the facts of a particular case, all of these factors could be relevant in the "in furtherance of" inquiry. However, relying solely on these factors effectively limits the intended reach of the statute. In particular, it creates exceptions for cases involving transportation of illegal aliens who are friends or relatives of defendant, transportation not involving any profit motive, and transportation that is not furtive or concealed. Although it is not uncommon to find situations where a person furtively transports "human cargo" for profit, it is undoubtedly more common to find situations where a person transports an illegal alien who is also a friend or relative to enable the person to find work and/or to evade immigration authorities. The statute criminalizes both acts of transportation.

Mexico border. Second, the transportation was intended to assist them in finding employment. If their efforts had been successful, the benefits from finding employment undoubtedly would have assisted them in remaining in the United States. *See generally United States v. Sanchez–Vargas,* 878 F.2d 1163, 1169 (9th Cir.1989) ("the transport offense was directed, in large part, at curbing the widespread practice of transporting illegal immigrants, already in the United States, to jobs and locations away from the border where immigration enforcement resources may have been more scarce").

We note in passing that the "in furtherance of" element is also supported by additional evidence. In carrying out the trip, defendant utilized a vehicle that is commonly associated with illegal transportation of aliens (a pickup with a camper shell with darkened windows). Both of the aliens, at least for part of the trip, rode inside the camper shell. Defendant was the sole driver of the pickup. He drove through the night and was stopped at the checkpoint during the early morning hours. Further, both aliens paid defendant to take them to Denver.[3]

The judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to reinstate the verdict of the jury.

---

**3.** We emphasize that this additional evidence is not critical to our holding that the "in furtherance of" element was satisfied. Indeed, even discounting all of this additional evidence, we would reach the same conclusion.