**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

JEREMIAH VAUGHN GREGORY, Jr.,

  Defendant - Appellant.

No. 07-4189

(D. Utah)

(D.C. No. 2:05-CR-00893-PGC-1)

ORDER AND JUDGMENT[*]

Before **TACHA**, **ANDERSON**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant, Jeremiah Vaughn Gregory, Jr., was indicted on one count of bank robbery, in violation of 18 U.S.C. 2113(a), for robbery of a

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Wells Fargo bank in Salt Lake City, Utah, on May 6, 2005. After a jury found him guilty, he was sentenced to 240 months' imprisonment. He appeals his conviction, arguing that the district court erred in (1) failing to dismiss the indictment for lack of jurisdiction, and (2) effectively denying him his right to present his theory of the defense at trial. We affirm.

## BACKGROUND

As indicated, Gregory was indicted on one count of bank robbery. Proceeding *pro se*, Gregory filed a motion to dismiss the indictment for lack of jurisdiction. He argued that he was a "member of the radical white supremacist organization called THE ORDER," an "ultra-fundamentalist element of the Aryan Nation"; that the group had asked the government to cede five states (Washington, Oregon, Idaho, Montana and Utah) to create a safe haven for white people; and that, upon rejection of that plan, Gregory and others had renounced their United States citizenship, joined The Order's militia, and commenced activities designed to destabilize the United States government. Motion To Dismiss at 2, R. Vol. I. "Zionist banks and financial institutions were targeted" and Gregory stated he "participated in numerous operations." Id. Gregory then argued:

> As a combatant, the principle of military immunity shields Gregory from being held accountable to civilian authorities for their actions. Combatants are held accountable to military laws and the generally

accepted rules of war. Neither the beliefs of the individual nor the reason behind the conflict have any bearing on this grant of military immunity. The test is whether the individual was a combatant and that the alleged acts were undertaken in furtherance of this conflict. . . . Gregory is clearly a combatant in the struggle for a racially pure white homeland. THE ORDER has from its inception, attacked banks and corporate institutions to achieve its goal of destabilizing the government of the United States.

Id. at 2-3. The district court denied the motion, finding Gregory's "arguments entirely lack[ed] merit." Order Denying Motion to Dismiss at 1, R. Vol. I. The district court denied Gregory's motion to reconsider, calling the motion "facially meritless." Order Denying Motion to Reconsider at 1, R. Vol. I.

Gregory also filed a motion to suppress evidence, including his confession, both of which were obtained in a hotel room following his arrest. Following a hearing, the district court denied the motion. There then followed a colloquy between the court and Gregory touching upon a number of matters, including Gregory's statement that he was "going to say there was justification, moral or otherwise, for the robbery and present that issue to the jury for them to decide whether or not they should exercise their right as a community conscience to acquit in spite of the facts and instructions of the Court." Tr. of Motion to Suppress Hr'g at 73-74, R. Vol. IV. Gregory argued that "the jury has a sovereign right to acquit irregardless" and that his organization had been robbing banks to fund its "ongoing fight against the government" since "we not only have a duty but we have a right to throw out an oppressive government." Id. at 77-79.

While the district court expressed doubt about the relevance and admissibility of that evidence, it stated that a final determination would be made at the pre-trial conference.

At the final pre-trial conference, Gregory offered various instructions advising the jury about their "sovereign right to acquit even in the face of the evidence." Tr. of Final Pre-Trial Hr'g at 18, R. Vol. VI. The district court rejected each proposed instruction. When Gregory asked how much "leeway" he would be given to argue the issue to the jury, the court stated, "[Y]ou're going to be questioning witnesses about facts, and then in your opening and closing statement you're not entitled to argue that they should disregard the law." Id. at 22. Gregory then stated that he might take the stand himself to testify as to the same theory. The court expressed doubt about the relevancy of such testimony, and told Gregory the court would preclude "any evidence along the lines that Mr. Gregory has just described." Id. at 41-42. The court then stated:

> And the record should also reflect that one of the reasons I'm doing this is to protect Mr. Gregory in the sense that if the jury learns that he is a member of a white supremacist organization that has been robbing banks since the 1980's, that might tend to inflame their passions and lead to an inaccurate result on this particular charge.
> . . . .
> There is not going to be any prior bad acts coming into the trial on the theories that have been outlined to me this morning.
> . . . .
> I have firmly ruled that you're not entitled to nullification instructions or nullification arguments, and you're not entitled to present evidence about some white supremacist operation or war with the United States.

Id. at 42, 43, 49. The court subsequently denied Gregory's motion to reconsider its ruling on Gregory's theory of defense.

On the second day of trial, after the government rested, Gregory indicated he might want to testify. Another colloquy ensued, and the court stated it would allow Gregory to briefly explain why he robbed the bank, as long as it did not "turn into a filibuster or an extensive [argument]." Tr. of Trial at 170, R. Vol. IX. Gregory then stated he would not testify.

The jury returned a guilty verdict. At sentencing, Gregory reiterated his separatist philosophy, announcing that the district court had "turned this courtroom into a cesspool, a sleazy and vile place" and assuring the court "that retribution will be swift, certain, and exact a very heavy toll. . . . [W]hile I would like to be the one to visit revenge retribution to your doorstep, I'll have to trust that to others, but believe me, when all is said and done, you will not escape the wrath which you rightfully deserve." Tr. of Sentencing Hr'g at 6-9, R. Vol. X. The district court determined that an upward departure under United States Sentencing Commission, Guidelines Manual ("USSG") 5K2.9, or an upward variance under 18 U.S.C. 3553(a), was warranted based upon the "strong nexus . . . between Mr. Gregory's purpose in robbing Wells Fargo Bank . . . and his intent to commit other crimes with the proceeds from that robbery." Order Regarding Sentencing Enhancement at 15, R. Vol. I. The court accordingly sentenced Gregory to 240 months.

Gregory appeals, arguing the district court erred in failing to dismiss the indictment for lack of jurisdiction and that it erred by preventing him from presenting his theory of defense.

**DISCUSSION**

We review de novo a district court's conclusion that it has subject matter jurisdiction over a criminal case. Huerta v. Gonzales, 443 F.3d 753, 755 (10th Cir. 2006). We review the denial of a motion to reconsider for abuse of discretion. United States v. Barajas-Chavez, 358 F.3d 1263, 1266 (10th Cir. 2004).

Gregory argues that the district court erred in failing to transfer jurisdiction over his case to a military tribunal, given that Gregory was a self-declared "enemy belligerent" under Article 21 of the Uniform Code of Military Justice ("UCMJ"). As the government points out in its brief, this argument fails for multiple reasons. First, pursuant to 18 U.S.C. 3231, the district court had jurisdiction over this case. Second, a military tribunal would have no jurisdiction over Gregory under the UCMJ–the UCMJ lists those who are subject to its provisions and, as the government aptly puts it, "[a] self-styled enemy belligerent, performing bank robberies within the United States in furtherance of a hostile cause, is simply not included." Appellee's Br. at 14. Third, neither the UCMJ nor any other provision of law establishes any military commission with authority

to hear this case. Finally, Gregory cannot divest a federal district court of criminal jurisdiction simply by claiming his crime was part of a "war" against the United States.

With respect to his argument that the district court prevented him from presenting his theory of defense, we review a district court's decision to exclude evidence for an abuse of discretion. United States v. Jordan, 485 F.3d 1214, 1218 (10th Cir. 2007). There was no such abuse of discretion here. First, the record discloses that the district court would in fact have allowed Gregory to present his justification for robbing the bank, within appropriate limits. Second, the district court properly determined the proposed testimony was more likely to confuse or mislead the jury than to establish any element of the crime charged or otherwise properly assist the jury in its deliberations. "Our deference to the trial court is based upon its first-hand ability to view the witnesses and evidence and assess credibility and probative value." Id. Gregory's proffered testimony was of little relevance or probative value, and had the potential to mislead or confuse. The district court did not err in its handling of Gregory's proffered testimony about his theory of defense.

**CONCLUSION**

For the foregoing reasons, Gregory's conviction is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge